UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORNELL A. BENSON, JR., | |
| Petitioner, | Case No. C10-892-JCC-JPD |
| v. | |
| STEVE SINCLAIR, | REPORT AND RECOMMENDATION |
| Respondent. | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Cornell Benson, Jr., has submitted to this Court for review a petition for writ of habeas corpus under 28 U.S.C. § 2254.[1]  Petitioner, by way of the instant petition, seeks relief from a 2007 King County Superior Court judgment and sentence.  Respondent has filed an answer to the petition together with relevant portions of the state court record.  This Court, having carefully reviewed the petition, the answer, and the state court record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

---

[1] Petitioner was in the custody of the Washington Department of Corrections at the time he filed his petition.  However, it appears that petitioner may currently be in the custody of the King County Department of Adult and Juvenile Detention.  (*See* Dkt. No. 26 at 16.)

REPORT AND RECOMMENDATION - 1

## FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals summarized the facts relevant to petitioner's conviction as follows:

> After drinking at a sports bar into the early morning hours of August 13, 2006, Cornell Benson and his sister, Rose Benson, fought over whether Benson was too drunk to drive Rose's car. The two scuffled in the middle of 16th Avenue SW in the White Center area.
>
> Kelly Turner, while driving through the area, witnessed the fight and called 911. She observed Benson swinging a belt or rope at Rose. She testified that the weapon had slack in it and did not appear solid. She also observed Rose trying to shove Benson out of the street. Turner also noticed that the back window of their car was "busted in."
>
> Joseph Bean, another witness to the fight, testified that he observed Benson punch Rose, causing her to fall to the ground. He also saw Benson stomp on Rose's head and kick her. Bean pulled his car within about three feet of Benson and shouted for him to stop hitting Rose, but Benson did not stop immediately. Benson then walked over to Rose's car and grabbed something like a pipe. He saw Benson shatter the car window with the object and then hit Rose in the abdomen with it four or five times. Rose fell to the ground and curled into the fetal position to protect herself. Bean left the scene to get help.
>
> Deputy King County Sheriff Kevin Davis first responded to the scene. After speaking with Bean, he arrested Benson. Deputy Davis observed that Rose was holding her side as if she was in a lot of pain. Deputy Davis also observed that Rose was not wearing a shirt, just a bra, and that her abdomen showed marks and some redness. Her elbows were bloody and swollen, and she had a fresh red mark on her face. When Deputy Davis took pictures of Rose, she appeared to have difficulty lifting her arms, as if in pain.
>
> Sheriff Davis collected a tire iron from the ground by the car. At trial, Bean identified the tire iron as the object he had seen Benson grab from the car.
>
> Rose testified at trial that Benson did not stomp on her or strike her with a tire iron. She also testified that although her signed statement to police indicated that Benson punched and stomped her, she did not recall saying that to police.

REPORT AND RECOMMENDATION - 2

The State charged Benson with one count of second degree assault (domestic violence). The jury convicted Benson as charged. The jury also returned a special verdict that Benson was armed with a deadly weapon when he committed the crime.

(Dkt. No. 29, Ex. 2 at 1-3.)

On December 7, 2007, petitioner was sentenced to a total term of 75 months confinement. (*Id.*, Ex. 1 at 4.) Petitioner thereafter appealed his conviction to the Washington Court of Appeals. (*See id.*, Exs. 3, 5, 6 and 7.) On March 2, 2009, the Court of Appeals filed an unpublished opinion affirming petitioner's conviction. (*Id.*, Ex. 2.) On April 21, 2009, petitioner submitted a motion for reconsideration to the Court of Appeals for filing. (*Id.*, Ex. 8.) However, the Court of Appeals had previously denied a motion by petitioner for an extension of time to file his motion for reconsideration and, thus, the motion for reconsideration was placed in the file without action. (*Id.*, Exs. 9 and 10.) Petitioner did not seek further review by the Washington Supreme Court, and the Court of Appeals issued a mandate terminating direct review on May 29, 2009. (*Id.*, Ex. 11.)

On May 28, 2009, petitioner filed a personal restraint petition in the Washington Court of Appeals. (*See id.*, Ex. 12.) Petitioner asserted therein that his trial counsel rendered ineffective assistance when she failed to pursue a diminished capacity defense. (*See id.*) On June 24, 2009, the Acting Chief Judge of the Court of Appeals issued an order dismissing the petition. (*Id.*, Ex. 13.) Petitioner thereafter filed a motion for discretionary review in the Washington Supreme Court. (*Id.*, Ex. 14 at 2.) On September 17, 2009, the Supreme Court Commissioner issued a ruling denying review and, on December 30, 2009, the Court of Appeal issued a certificate of finality in petitioner's personal restraint proceedings. (*Id.*, Exs. 15 and 16.) Petitioner now seeks federal habeas review of his conviction.

REPORT AND RECOMMENDATION - 3

GROUND FOR RELIEF

Petitioner presents a single ground for relief in his federal habeas petition:

Ineffective Assistance of Counsel (Diminished Compasity (sic)).

(Dkt. No. 13 at 5.)

DISCUSSION

Respondent concedes in his answer to the petition that petitioner has exhausted his single ground for federal habeas relief. Respondent argues, however, that petitioner is not entitled to relief because the state courts reasonably denied petitioner's ineffective assistance of counsel claim.

Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a

REPORT AND RECOMMENDATION - 4

state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

## Ineffective Assistance of Counsel

Petitioner asserts in his petition that he was denied effective assistance of counsel when his trial counsel failed to pursue a diminished capacity defense. A criminal defendant has a right, guaranteed by the Sixth Amendment, to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential, and there is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

REPORT AND RECOMMENDATION - 5

The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*., 466 U.S. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id.*

The Washington Court of Appeals applied the *Strickland* test to petitioner's claim that counsel rendered ineffective when she failed to pursue a diminished capacity defense and found that petitioner had not sustained his burden of establishing that he was prejudiced by counsel's performance because he had not provided any evidence to support a diminished capacity defense. (Dkt. No. 29, Ex. 13.)

Petitioner appears to argue in these proceedings that the fact that he had his competency questioned several times prior to trial, and had been declared incompetent to stand trial at one point, establishes that his trial counsel rendered ineffective assistance when she failed to present a diminished capacity defense. (*See* Dkt. No. 13 at 5.) While the record before this Court certainly confirms that petitioner's mental health presented concerns for the court and counsel throughout petitioner's criminal proceedings, the record does not support petitioner's claim that trial counsel erred in failing to present a diminished capacity defense.

Petitioner's trial counsel was Kristen Murray. The record reflects that Ms. Murray took over petitioner's defense in August 2007, approximately a year after charges were originally filed against petitioner. During the early stages of the case, there were significant concerns regarding petitioner's competency to stand trial. (*See* Dkt. No. 29, Ex. 17, Trans. of Oct. 29, 2007 at 5.) An initial competency evaluation apparently resulted in a determination that petitioner was competent to stand trial. (*Id*.)

Ongoing concerns regarding petitioner's competency led to a second evaluation and a finding that petitioner was not competent. (*See id*. and Trans. of Nov. 14, 2006 at 3-4.)

REPORT AND RECOMMENDATION - 6

Petitioner was thereafter committed to Western State Hospital for a period of 90 days for competency restoration. (*See* Dkt. No. 29, Ex. 17, Trans. of Oct. 29, 2007 at 5 and Trans. of Nov. 14, 2006 at 3-4.) Though not entirely clear from the record before this Court, it appears that petitioner's competency was deemed restored at the end of that 90 day period and the criminal proceedings resumed. However, in June 2007, the trial judge ordered yet another psychological examination to evaluate petitioner's competency as well as to assess whether petitioner might have a mental health defense available to him such as diminished capacity or insanity. (*See* Dkt. No. 13, Attachment 2 at 3.) In late July 2007, petitioner was found competent to stand trial and his criminal proceedings resumed again. (Dkt. No. 29, Ex. 17, Trans. of July 25, 2007 at 5-6.)

After Ms. Murray took over the case, she sought a continuance so that she could explore whether there might be a mental health defense available to petitioner. (*See id*., Trans. of Oct. 24, 2007 at 6 and Trans. of Oct. 29, 2007 at 5.) Ms. Murray obtained funding, found an expert, and had petitioner evaluated. (*See id*., Trans. of Oct. 24, 2007 at 5.) However, following the evaluation, the expert advised Ms. Murray that he didn't think petitioner's case reached the level of diminished capacity or insanity. (*Id*., Trans. of Dec. 7, 2007 at 9.) He apparently did believe, however, that petitioner's condition was such that it would justify a downward departure at sentencing and Ms. Murray argued for such a departure at petitioner's sentencing hearing. (*See id*. at 6-10.)

The record makes clear that petitioner's trial counsel explored the possibility of a mental health defense but ultimately determined that such a defense was not available based on the opinion of the retained expert. Petitioner offered no evidence in his collateral proceedings before the state courts, and he offers no evidence in these proceedings, that a diminished capacity

REPORT AND RECOMMENDATION - 7

defense was, in fact, available. Petitioner has not demonstrated that counsel's performance was either deficient or prejudicial. Accordingly, petitioner's ineffective assistance of counsel claim should be denied.

### Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to his ineffective assistance of counsel claim.

### CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

DATED this 25th day of May, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8